## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION
## Case No. 3:15-CV-648-TBR

IN THE MATTER OF:
WALSH CONSTRUCTION COMPANY,
for Exoneration from or Limitation of
Liability (Barge KS395)                                              In Admiralty

AND

IN THE MATTER OF: THE COMPLAINT FOR
EXONERATION FOR OR LIMITATION OF
LIABILITY BY JAMES MOODY, AS OWNER OF A
26.1 FOOT 2011 SUNTRACKER PB24 VESSEL
BEARING HULL IDENTIFICATION NO.
BUJ10743J011

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon multiple motions filed by the parties. The Claimants have filed four Motions to Dissolve this Court's Restraining Order and Stay All Proceedings in this Action Pending Resolution of Claims Filed in State Court. (Docket Nos. 16; 18; 42; 46.) Petitioner Walsh Construction Company has filed a Motion to Strike the Claimants' Demands for a Jury Trial in their Answers. (Docket No. 20.) Several Claimants have also filed Motions for Judgment on the Pleadings as to Walsh Construction Company's Complaint, (Docket No. 26), and James Moody's Complaint, (Docket No. 59). Lastly, Petitioner James Moody has filed a Motion for Leave to File his First Amended Complaint. (Docket No. 69.) The Court will consider each of these motions below.

Factual Background

This case arises out of an accident that occurred on July 4, 2015 between a pontoon boat and a barge that was moored at or near Tower 5 of the northbound 1-75 bridge between Louisville, Kentucky and Jeffersonville, Indiana. (Docket No. 1 at 1-2.) Petitioner Walsh Construction Company ("Walsh") owns the flat deck barge, referred to as Barge KS395, which was involved in the incident. *Id.* at 1-2. According to Walsh, the value of Barge KS395 is $150,000.00. (Docket No. 6.) Petitioner James Moody was the owner of the 2011 Suntracker PB24 ("the pontoon boat") that was also involved in the incident. (Docket No. 69-2 at 2.) In August 2014, James Moody entered into a "bareboat charter agreement with Derbyville Water Rentals, LLC ("Derbyville") . . . wherein [he] surrendered possession and control over the [pontoon boat] to Derbyville Water Rentals, LLC." *Id.* Derbyville rented the pontoon boat to customers who wished to use it on the Ohio River. *Id.* James Moody asserts that the value of the pontoon boat is $1,600.00. (Docket No. 30.)

On July 4, 2015, Derbyville rented the pontoon boat to Danal Swinney, Sr. (Docket No. 9 at 4.) The following individuals were passengers aboard the pontoon boat: Donald Webster, Donald Swinney, Joyce Wright, Kyre Wright, A'Daisha Swinney, Mark Swinney, Jr., Danal Swinney, Jr., and Daniel Swinney. (Docket Nos. 8 at 5; 9 at 4; 10 at 4; 11 at 4; 12 at 5.) According to Claimants, the Ohio River gauge was over 14 feet that day at both the Water Tower at Louisville and McAlpine Dam Upper Gage, and the water current was strong. (Docket Nos. 8 at 4; 9 at 4; 10 at 4; 11 at 4; 12 at 4.) Claimants allege that Danal Swinney, Sr. was operating the pontoon boat on the Ohio River near mile marker 603, when law enforcement directed him "toward the Indiana shore to clear the way for the Belle of Louisville's passage." (Docket Nos. 8 at 5; 9 at 4; 10 at 4; 11 at 4; 12 at 5.) The Claimants state that after nightfall, "the pontoon boat

struck [Barge KS395] that had its spuds deployed and was being used . . . in the construction zone operated by Walsh." (Docket No. 8 at 5; 9 at 5; 10 at 4-5; 11 at 4-5; 12 at 5.) After impact, the Claimants contend that the pontoon boat was "sucked under the rake" of Barge KS395. (Docket No. 8 at 5; 9 at 5; 10 at 5; 11 at 5; 12 at 5.) Following the impact, tragically Donald Swinney, Joyce Wright, A'Daisha Swinney, Mark Swinney, Jr., and Danal Swinney, Sr. all perished. (Docket No. 8 at 5; 9 at 5; 10 at 5; 11 at 5; 12 at 5.) The remaining passengers, Donald Webster, Kyre Wright, Daniel Swinney, and Danal Swinney, Jr. were injured but survived. (Docket No. 8 at 5; 9 at 5; 10 at 5; 11 at 5; 12 at 5.)

After the accident, Walsh and James Moody filed separate actions for exoneration from or limitation of liability under the Limitation Act. Following a teleconference with the parties in both actions, this Court consolidated the actions. (Docket No. 24.)  The Court has entered restraining orders with regards to Walsh and Mr. Moody, enjoining litigation related to this action in any other forums. (Docket Nos. 5; 38.)

## Legal Background

The Limitation Act, 46 U.S.C. § 181 *et seq.*, "allows a vessel owner to limit liability for damage or injury, occasioned without the owner's privity or knowledge, to the value of the vessel or the owner's interest in the vessel." *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438 at 446, (2001). Congress passed the Act "to limit the liability of vessel owners to their interest in the adventure . . . and thus to encourage shipbuilding and to induce capitalists to invest money in this branch of industry." *British Transp. Comm'n v. United States*, 354 U.S. 129, 133 (1957) (citations omitted). Additionally, the Act "had the purpose of putting American shipping upon an equality with that of other maritime nations that had their own limitation acts." *Lewis*, 531 U.S.

at 446-47 (quoting *The Main v. Williams*, 152 U.S. 122, 128 (1894)) (internal quotation marks omitted).

The procedure for limitation actions is found in Supplemental Admiralty and Maritime Claims Rule F. As the Supreme Court has explained:

> Rule F sets forth the process for filing a complaint seeking exoneration from, or limitation of, liability. The district court secures the value of the vessel or owner's interest, marshals claims, and enjoins the prosecution of other actions with respect to the claims. In these proceedings, the court, sitting without a jury, adjudicates the claims. The court determines whether the vessel owner is liable and whether the owner may limit liability. The court then determines the validity of the claims, and if liability is limited, distributes the limited fund among the claimants.

*Id.* at 448. Having addressed the background of the Limitation Act, the Court will now address the various motions that the parties have filed in this action.

## Discussion

I. Claimants' Motions to Dissolve this Court's Restraining Order and Stay All Proceedings in Limitation/Exoneration Action Pending Resolution of Claims Filed in State Court

The Claimants through multiple motions have requested that this Court dissolve its restraining orders and stay the limitation proceedings pending resolution of claims filed in state court. (Docket Nos. 16 at 5; 18 at 6; 42 at 4; 46 at 5.) Walsh and Mr. Moody have responded, and they argue that "a restraining order on other suits in a limitation of liability proceeding cannot be dissolved in a 'multiple claims-inadequate fund' case." (Docket No. 29 at 2; *see also* Docket Nos. 52 at 2; 53 at 2.)

The Limitation Act requires that once a shipowner files a petition and tenders an adequate bond, "the district court must enjoin all other proceedings against the shipowner involving issues

4

arising out of the subject matter of the limitation action." *S & E Shipping Corp. v. Chesapeake & O. Ry. Co.*, 678 F.2d 636, 642 (6th Cir. 1982) (citations omitted). According to the Sixth Circuit Court of Appeals, "[t]he purpose of the *concursus*, the proceeding before the admiralty court in which all competing claims must be litigated, is to provide for a marshalling of assets and for a setting of priorities among claims where the asserted claims exceed the value of the vessel and its freight." *Id.* When "multiple claims are asserted in the district court and are, in the aggregate, in excess of the limitation fund, a multiple claims-inadequate fund circumstance arises," and the district court must conduct a *concursus*. *Id.* at 643 (citations omitted); *see also Ex Parte Green*, 286 U.S. 437, 438-40 (1932); *Langnes v. Green*, 282 U.S. 531, 541-44 (1931).

Notably, there are two exceptions that require the district court to dissolve its stay and permit claimants to litigate their claims in a forum of their choice. *Lewis*, 531 U.S. at 451 (collecting cases from the courts of appeals that support this rule). The first exception applies when "the limitation fund exceeds the aggregate of all claims." *S & E Shipping Corp.*, 678 F.2d at 643 (citing numerous cases for support). The Supreme Court has reasoned that "where the value of the vessel and the pending freight, the fund paid into the proceeding by the offending owner, exceeds the claims made against it, there is no necessity for the maintenance of the *concursus*." *Lake Tankers Corp. v. Henn*, 354 U.S. 147, 152 (1957). This exception "protects the claimant's right to a jury trial in the forum of his choice without undermining the Limitation Act's policy of limiting the shipowner's liability to the value of the vessel and its freight." *S & E Shipping Corp.*, 678 F.2d at 643.

However, as the Sixth Circuit has explained:

> If a limitation fund is inadequate to pay all potential claims, a *concursus* is necessary to avoid competition among claimants for a

5

> greater share of a fixed limitation fund and to provide for a marshalling of assets and a setting of priorities. If other proceedings were not stayed in such circumstances, claimants might obtain judgments which would, in the aggregate, exceed the fund and thus subject the shipowner to liability in excess of the statutory limit.

*Id.* (citing *In re Trinidad Corp.*, 229 F.2d 423, 428 (2d Cir. 1955)).

The second exception applies when "only one claim is made, regardless of its size in relation to the value of the limitation fund." *Id.* (citations omitted) (citing several cases for support). Under this situation, "a *concursus* is unnecessary because there are no additional claimants competing for portions of the limitation fund." *Id.* However, in this situation, the district court must still decide whether the shipowner is entitled to limited liability, and the claimant "may pursue his common law remedies in another forum only if he concedes that the district court has exclusive jurisdiction over the question of whether liability is limited." *Id.* (citing a multitude of cases for support). Again, this exception furthers the purpose of the Limitation Act in limiting the shipowner's liablity and the purpose of preserving a claimant's right to a jury trial in an alternative forum. *Id.* at 644.

Neither of the exceptions apply in this case as there are fourteen claimants and their claims exceed the limitation fund. (*See* Docket Nos. 8, 9, 10, 11, 12.) However, the Claimants argue that as they have filed stipulations with this Court, (Docket Nos. 19; 22), that they believe are sufficient to protect the petitioners from liability that exceeds the amount of the limitation fund, this Court should lift its restraining order and stay these proceedings pending resolution of the claims Claimants intend to file in state court. (Docket No. 23 at 2-3.) The Claimants' request is unprecedented as there are so many individual claimants and their damages exceed the value of the limitation fund. The Claimants have cited to a number of cases to support their argument

but none of those cases involve an analogous situation with the vast number of claimants that are present in this action. (*See* Docket No. 23 at 1-2.)

A *concursus* is designed to "prevent[] claimants from securing judgments in various courts that, in the aggregate, exceed the fund and, thus, assures the owner that he will not be required to pay damages in excess of the statutory limits." *Gorman v. Cerasia*, 2 F.3d 519, 525 (3d Cir. 1993) (quoting *Universal Towing Co. v. Barrale*, 595 F.2d 414, 418 (8th Cir. 1979)). While it is true that "courts have struggled to define those situations that present a genuine 'multiple-claim-inadequate-fund' case" where a *concursus* is required, this case requires no such struggle. Claimants have not cited any cases that are analogous or applicable to this action, and the Court is unaware of any case in the Sixth Circuit where so many claimants whose claims exceed the limitation fund have not been required to submit to a *concursus*. Consequently, the Claimants' Motions to Dissolve this Court's Restraining Order and Stay All Proceedings in this Limitation/Exoneration Action will be DENIED.[1] (Docket Nos. 16; 18; 42; 46.)

## II. Walsh's Motion to Strike Claimants' Jury Demands

In their Answers, the Claimants included a demand for a jury trial. (Docket Nos. 8 at 8; 9 at 7; 10 at 7; 11 at 7; 12 at 8.) In response, Walsh filed a Motion to Strike Claimants' Jury

---

[1] Claimants argue that this Court should lift its restraining orders because they have yet to file their state common law claims in state court. (Docket Nos. 23 at 3-4; 32 at 3-4.) They argue that if this Court does not lift its restraining orders, the applicable Statute of Limitations will run and deprive them of the opportunity to litigate their claims in a forum of their choice. (Docket Nos. 23 at 3-4; 32 at 3-4.) However, Kentucky Revised Statutes § 413.260 tolls the applicable statute of limitations while this Court's restraining orders remain in effect. KRS § 413.260 states:

> If the doing of an act necessary to save any right or benefit is restrained or suspended by injunction or other lawful restraint, vacancy in office, absence of an officer or his refusal to act, the time covered by the injunction, restraint, vacancy, absence or refusal to act shall not be counted in the application of any statute of limitations.

KRS § 413.260. Consequently, the Court is unpersuaded by Claimant's argument that it should lift its restraining orders in order to ensure the statute of limitations does not run.

Demands pursuant to Rule 12(f) of the Federal Rules of Civil Procedure. (Docket No. 20 at 1.) Walsh argues that there is "no right to a jury trial in limitation of liability proceedings" under the Limitation Act. (Docket No. 20 at 2.) The Claimants in turn argue the Court should "[e]mpanel a jury at the outset of trial, . . . [then the] Court will determine the limitation issues at a bench trial, and any remaining issues are submitted to the jury."[2] (Docket No. 33 at 2-3.)

There is no right to a jury trial in an action brought pursuant to the Limitation Act. *Lewis*, 531 U.S. at 448. As the Sixth Circuit has explained, "[f]ederal courts have exclusive admiralty jurisdiction to determine whether a vessel owner is entitled to limited liability." *In re Muer*, 146 F.3d 410, 417 (6th Cir. 1998). (first citing *Ex parte Green*, 286 U.S. at 438–39; then citing *Langnes*, 282 U.S. at 542); *see also Lewis v*, 531 U.S. at 448 (emphasis added) ("In [actions under the Limitation Act], the court, sitting without a jury, adjudicates the claims.") Thus, there is an inherent "tension between a vessel owner's right to have the liability limitation determined in federal court, where there is no right to a jury trial . . . and a claimant's pursuit of remedies in state court." *Id.* This tension is apparent in federal law as "the same statute that grants the federal courts exclusive admiralty jurisdiction saves to suitors 'all other remedies to which they

---

[2] This procedure of adjudication has been suggested before by claimants in a case before the Fourth Circuit Court of Appeals. *Pickle*, 174 F.3d at 450. The court ultimately rejected such a procedural structure. *Id.* at 450-51. The court stated the following:

> [T]he very language of the Shipowner's Limitation of Liability Act precludes the simultaneous trial of a limitation action and [another] action, by providing explicitly that actions other than the limitation-of-liability action must "cease." *See* 46 U.S.C. app. § 185. Moreover, the claimants must, if they wish to present their claims, reassert them in the limitation-of-liability action apart from their original actions. *See* Fed. R. Civ. P. Supp. R. F(5). Thus, insofar as claimants proceed in a limitation-of-liability action, they are not entitled to a trial by jury . . . . But if the limitation-of-liability is denied, then the claimants may elect to proceed with their original actions before any jury authorized and demanded in those actions. *See Wheeler*, 764 F.2d at 1011; *In re Wood*, 230 F.2d at 199.

*Id.* at 450. While the Claimants cite cases from federal district courts in the Second Circuit that have ruled otherwise, this Court is persuaded by the reasoning of the Fourth Circuit Court of Appeals and will follow its precedent. (*See* Docket Nos. 33 at 2-3; 34 at 2-3.)

are otherwise entitled.'" *Id.* (quoting 28 U.S.C. § 1333(1)). According to the Sixth Circuit, the "savings to suitors" clause "embodies a presumption in favor of jury trials and common law remedies in the forum of the plaintiff's choice." *Id.* In order to balance the tension between the competing interests of a vessel owner's right to limit his liability and a claimant's right to a jury trial, the Supreme Court has carved out two exceptions when a claimant "must be allowed to pursue a claim before a jury." *Id.* (first citing *Ex parte Green*, 286 U.S. 437; then citing *Langnes*, 282 U.S. 531). "The first situation is where the value of the limitation fund (value of the vessel plus freight) exceeds the total value of all claims asserted against the vessel owner . . . and the second is where only one claim is asserted against the vessel owner." *Id.* (citations omitted). Here, neither one of these exceptions apply as this action involves multiple claimants and the claims exceed the value of the limitation fund. Therefore, the Claimants do not have an avenue through which they can demand a jury trial in this limitation action.

However, if a vessel owner fails to establish his right to limited liability under the Limitation Act and his limitation action is denied, the claimants are then free to pursue their original claims in full. *Pickle v. Char Lee Seafood, Inc.*, 174 F.3d 444, 449 (4th Cir. 1999). Essentially, if the limitation action is denied, claimants "may elect to proceed with their original actions before any jury authorized and demanded in those actions." *Id.* (first citing *Wheeler v. Marine Navigation Sulphur Carriers, Inc.*, 764 F.2d 1008, 1011 (4th Cir.1985); then citing *In re Wood*, 230 F.2d 197, 199 (2d Cir. 1956)). A district court will lift its restraint on other actions if it finds a shipowner is not entitled to limited liability, as "the reason for *concursus* and restraint of other proceedings [is] removed [and] no reason remain[s] to deprive [claimants] of their choice of forum or their statutory right to jury trials." *Wheeler*, 764 F.2d at 1011. The claimants may pursue their claims in state court or they "may elect to proceed in federal court, which can

9

keep the case pursuant to its admiralty jurisdiction." *In re Holly Marine Towing, Inc.*, No. 00 C 4750, 2003 WL 21384639, at *1 (N.D. Ill. June 16, 2003) (citations omitted); *see also Just v. Chambers*, 312 U.S. 383, 386 (1941). After reviewing current legal precedent, this Court finds that if the Plaintiffs' action for limitation is denied, the Court will lift its restraint on other actions related to this matter, and the Claimants will be free to pursue their claims before a jury.

For the aforementioned reasons, the Court will **GRANT** Walsh's Motion to Strike the Claimants' jury demands from their Answers in this action. (Docket No. 20.)

III.     Motion for Judgment on Pleadings as to Petitioner Walsh

The following Claimants have filed a Motion for Judgment on the Pleadings as to Petitioner Walsh: Danal Swinney, Jr. (a minor, by and through his mother Latosha Sloan), Chloe and MacKenzie Wilson (minors, by and through their mother Lisa Wilson), James Flowers (a minor, by and through his mother Monica Flowers), and Albert Owlsley (as Administrator of the Estate of Danal Swinney, Sr.). (Docket No. 26.) The remaining Claimants did not file a Motion for Judgment on the Pleadings with regards to Walsh.

Under the Rule 12(c) of the Federal Rules of Civil Procedure, "a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A court is to apply the same standard to a motion for judgment on pleadings that it applies to a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Warrior Sports, Inc. v. Nat'l Collegiate Athletic Ass'n*, 623 F.3d 281, 284 (6th Cir. 2010) (citing *EEOC v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001)). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase*

*Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (quoting *Southern Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973)). The Sixth Circuit Court of Appeals has stated that a Rule 12(c) motion for judgment on the pleadings, "is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Id.* (quoting *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991)).

When considering a Motion for Judgment on the Pleadings, "[a]lthough [the Court's] decision rests primarily upon the allegations of the complaint, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint[ ] also may be taken into account." *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008) (alterations in original) (quoting *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)) (internal quotation marks omitted); *see also Whittiker v. Deutsche Bank Nat. Trust Co.*, 605 F. Supp. 2d 914, 925 (N.D. Ohio 2009) ("In addition to consideration of the pleadings, federal courts may also consider materials that are public records or otherwise appropriate for taking judicial notice without converting a Rule 12[(c)] motion to a Rule 56 motion.") "Documents attached to a motion [for judgment on the pleadings] are considered part of the pleadings if they are referred to in plaintiff's complaint and are central to the claims, and therefore may be considered without converting a Rule 12[(c)] motion [for judgment on the pleadings] to a Rule 56 motion." *Whittiker*, 605 F. Supp. 2d at 924 (citing *Weiner v. Klais and Company*, 108 F.3d 86, 89 (6th Cir. 1997)). According to Rule 12(d) of the Federal Rules of Civil Procedure, if a court considers information outside of the pleadings when ruling on a 12(b)(6) or 12(c) motion, the motion must be treated as a motion for summary judgment under Rule 56. Fed. R. Civ. P. 12(d).

Here, the Claimants argue in their Motion for Judgment on the Pleadings that Walsh is not entitled to seek limitation of its liability under the Limitation Act because it allegedly entered into a contract to accept liability with the United States Coast Guard. (Docket No. 26-1 at 3-4.)

According to established legal precedent, "[l]iability stemming from a personal contract is not subject to limitation under the Act." *S & E Shipping Corp. v. Chesapeake & O. Ry. Co.*, 678 F.2d 636, 644 (6th Cir. 1982) (citations omitted); *see also American Car & Foundry Co. v. Brassert*, 289 U.S. 261, 264 (1933); *Pendleton v. Benner Line*, 246 U.S. 353, 356 (1917); *Richardson v. Harmon*, 222 U.S. 96, 106 (1911). The Supreme Court has stated that "[t]he liability . . . limited [by the Limitation Act] is an imputed liability; it is a liability imputed by law by reason of the ownership of the vessel. For his own fault, neglect, and contracts the owner remains liable." *Am. Car & Foundry*, 289 U.S. at 264. The Sixth Circuit has elaborated on the Court's statement and explained that "[t]he Court established the personal contract exception because the Act is only intended to limit the shipowner's liability for matters beyond his control. A personal contract is obviously within the control of the shipowner." *S & E Shipping Corp.*, 678 F.2d at 645 (citing *Pendleton*, 246 U.S. at 356-57). "In application this is an equitable doctrine based on the proposition that a shipowner should not be able to promise an undertaking or performance that was within his personal control and then turn around and limit liability when his performance was faulty." *Mediterranean Shipping Co. S.A. Geneva v. POL-Atl.*, 229 F.3d 397, 403 (2d Cir. 2000) (quoting 2 Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 15-8, at 318 (2d ed. 1994)). "[T]he test of the personal contract exception is not merely that the shipowner entered into the contract personally, but is whether the obligation (and therefore the breach) was one the shipowner was personally bound to perform, rather than one contemplated

12

he would delegate to his agents and servants." *Id.* (quoting 2 Schoenbaum, *supra*, at § 15-8, at 318).

In support of their argument that the personal contract exception applies, the Claimants argue that "[a]n exoneration/limitation of liability action is not available to Walsh since it contractually agreed to be responsible for damages to persons or properties resulting from its work as [the] contractor on the Downtown Crossing bridges project." (Docket No. 26-1 at 1-2.) As proof, the Claimants have attached letters to their Motion from the United States Coast Guard, the entity that approved Walsh's permits, to employees of the Kentucky Transportation Cabinet that state that Walsh "agree[s] to be responsible for damages to persons or properties resulting from the work and save and hold harmless the United States from any claim for damages resulting from this operation." (Docket Nos. 26-2 at 2; 26-3 at 2.) However, the Court may not consider these letters when ruling on a Motion for Judgment on the Pleadings. *Whittiker*, 605 F. Supp. 2d at 924. These letters are not referred to in Walsh's Complaint filed with this Court and, therefore, cannot be considered part of the pleadings. (*See* Docket No. 1.) Furthermore, despite the Claimants' contentions otherwise, these letters are not appropriate for judicial notice. (Docket No. 48 at 2-3.) Rule 201 of the Federal Rules of Evidence governs judicial notice. Fed. R. Evid. 201. According to Rule 201(b), a court may "judicially notice a fact that is not subject to reasonable dispute." Fed. R. Evid. 201(b). Here, the letters in question are reasonably in dispute as the parties disagree as to whether or not they show that Walsh agreed to accept liability and effectively waived its right to limit its liability under the Limitation Act. (Docket 26-1 at 3-4; 33 at 3-5); *see also Antco Shipping Co. v. Sidermar S. p. A.*, 417 F. Supp. 207, 213 (S.D.N.Y. 1976).

In its response, Walsh raises several areas of disagreement with regards to the letters attached to the Claimants' Motion. Walsh contends that these letters do not show that it "has somehow agreed to be liable for all damages to any persons or property resulting from the construction of the bridge, regardless of whether Walsh has valid defenses to such claims." (Docket No. 44 at 3.) Walsh also "denies that the [paragraphs in the letters relied on by the Claimants] constitute[] a waiver of its right to seek exoneration from or limitation of liability for Claimants' claims and further denies that it has entered into any contract that has waived its right to exoneration from or limitation of liability for Claimants' claims." *Id.* at 4. Walsh questions the meaning of the words "work" and "operation" as used in the letters approving Walsh's permit and also argues that the Claimants have "failed to establish" that these letters were "still in effect and unaltered at the time of the July 4, 2015, incident." *Id.* Lastly, Walsh notes that the language in the paragraphs at issue "makes no mention of the waiver of any defenses, much less a waiver of the right to exoneration or limitation." *Id.* at 4-5.

It is evident from the parties briefing on this matter, that the letters are subject to dispute and, therefore, they are not appropriately subject to judicial notice, and the Court will not consider them at this time. Consequently, as material facts are in dispute and it is not at all clear at this stage that the Claimants are entitled to judgment as a matter of law, the Court will **DENY** Claimants' Motion for Judgment on the Pleadings**.** *See JPMorgan Chase Bank*, 510 F.3d at 581.

IV. Motion for Judgment on the Pleadings as to James Moody

The following claimants have filed a Motion for Judgment on the Pleadings as to Petitioner Mr. Moody: Virginia Morris (individually, and as Administrator of the Estate of A'Daisha Swinney), Nyree Wright (as Administrator of the Estate of Joyce Wright), Kyrie Wright (a minor, by and through her Guardian and Next Friend Belinda Caldwell), Devin

14

Swinney (a minor, by and through her Guardian and Next Friend Leah Walker), Mark Swinney, Sr. and Stephanie Swinney (individually and as Co-Administrators of the Estate of Mark Swinney, Jr.), Daniel Swinney (a minor, by and through his Guardian and Next Friend Mark Swinney, Sr.), Donald Webster (individually, and as Administrator of the State of Donald Swinney), Dai Swinney (a minor, by and through her Guardian and Next Friend Donald Webster). (Docket No. 59.) The remaining Claimants did not file a Motion for Judgment on the Pleadings with regards to Mr. Moody.

The Claimants argue that they are entitled to judgment on the pleadings in their favor because Moody cannot seek to limit his liability under the Limitation Act as he will be unable to satisfy the second prong of the two prong inquiry that this Court must conduct to determine the applicability of the Act. (Docket No. 59-1 at 3.) In response, Mr. Moody has filed a Motion for Leave to File a First Amended Complaint. (Docket No. 69.) He argues that "the amendment is necessary to conform to the facts of the case and will simultaneously allay the concerns presented in the Claimants' Motion." (Docket at 69 at 1.) However, the Claimants argue that any amendment to Mr. Moody's Complaint would be futile. (Docket No. 70 at 1.)

Under Rule 15(a)(2), the Court may grant the plaintiff leave to file an amended complaint, and the rule commands that the Court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "This rule gives effect to the principle that, as far as possible, cases should be determined on their merits and not on technicalities." *Webb v. Republic Bank & Trust Co.*, No. 3:11-CV-423-R, 2012 WL 2254205, at *3 (W.D. Ky. June 15, 2012) (citing *Cooper v.. Am. Employers' Ins. Co.*, 296 F.2d 303, 306 (6th Cir. 1961)). A court's denial of a party's motion for leave to amend may be appropriate "where there is undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments

previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Id.* (quoting *Miller v. Champion Enters., Inc.*, 346 F.3d 660, 690 (6th Cir. 2003)).

"[A] limitation action requires the district court to make a two-step inquiry: (1) negligence or unseaworthiness, and (2) the owner's privity or knowledge of the negligence." *In re Muer*, 146 F.3d 410, 415 (6th Cir. 1998). The Claimants argue that "when the petitioner seeking relief pursuant to the exoneration limitation act is the only person who has an ownership interest in the vessel and the company chartering that vessel, it is *de facto* impossible for him to prove that he did not have knowledge or privity of knowledge of any fault or negligence on behalf of the owner . . . which caused or contributed to the loss or injury." (Docket No. 59-1 at 3.) The Sixth Circuit has stated the following regarding the Limitation Act:

> [u]nder the Limitation Act, a ship owner is entitled to exoneration if he, his vessel, and crew are found to be completely free of fault. Even if not completely free of fault, the ship owner is entitled to limitation of liability if the ship owner had no knowledge or privity to the ship's negligence or unseaworthiness. The burden of proving negligence lies on the person claiming to be injured, but once negligence is established, the vessel's owner must prove lack of knowledge or privity to the negligence.

*In re Muer*, 146 F.3d at 416 (quoting *In re Cleveland Tankers, Inc.*, 67 F.3d 1200, 1203 (6th Cir. 1995), *cert. denied*, 517 U.S. 1220 (1996)). In *In re Muer*, the Sixth Circuit determined that the District Court did not err in denying claimant's summary judgment motion even though the owner of the vessel was on board at the time of the accident. *Id.* at 416-17. The Sixth Circuit concluded that "it is not the case . . . that simply alleging facts that support a finding of knowledge or privity, the second step in the district court's inquiry, leads to a dismissal as a matter of law." *Id.* at 416. "[D]espite any privity or knowledge on the part of the owner,

16

negligence remain[s] a prerequisite to the preclusion of a limitation of liability." *Id.* (quoting *In re M/V Sunshine, II*, 808 F.2d 762, 764 (11th Cir. 1987)). "[T]he claimant carries the burden of demonstrating negligence and thus the mere showing of privity or knowledge, the second step, does not preclude" an action under the Limitation Act. *Id.* This decision by the Sixth Circuit shows that even when a vessel's owner is on board at the time of the accident, he is not precluded from seeking to limit his liability under the Limitation Act.

Here, Mr. Moody was not aboard the pontoon boat when the events occurred. (*See* Docket No. 69-1.) Mr. Moody owned the pontoon boat and had "surrendered possession and control" over it to Derbyville, the entity that rented the pontoon boat to Danal Swinney, Sr., who was operating it at the time of the accident. (Docket No. 69-1 at 2-3.)[3]

Given the aforementioned case law in this Circuit, this Court does not believe that Mr. Moody's amendment of his Complaint would be futile. In a claim under the Limitation Act, the

---

[3] At the end of their Motion for Judgment on the Pleadings, the Claimants state that "[i]f a shipowner entrusts his vessel to a person who is not qualified to operate the vessel, he will be found in privity of knowledge of the negligen[t] acts of the unqualified operator." (Docket No. 59-1 at 4.) In support of this argument, the Claimants cite the Seventh Circuit Court of Appeals' decision in *Joyce v. Joyce*, 975 F.2d 379 (7th Cir. 1992). In *Joyce*, the Seventh Circuit stated that "if a shipowner knows enough to be liable for negligent entrustment, he knows too much to be eligible for limited liability under the [Limitation] Act." The Seventh Circuit went on to conclude the following:

> Given the nature of the tort of negligent entrustment, it is clear that the Limitation of Shipowner's Liability Act affords no protection to [the shipowner]. If [the shipowner] knew or had reason to know that [the operator] should not have been entrusted with the boat, he not only committed the tort of negligent entrustment but also had either knowledge or constructive knowledge sufficient to place him beyond the protection of the Limitation of Liability Act. On the other hand, if [the shipowner] did not entrust the boat to [the operator] under circumstances in which he knew or should have known of [the operator's] inability, he will incur no liability for negligent entrustment and, consequently, has no need of the Act's protection. In either case, the district court could not do anything to affect either party and was correct to dismiss the suit for lack of subject matter jurisdiction

*Joyce*, 975 F.2d at 385. This Court does not feel that this case is amenable to the Seventh Circuit's analysis in *Joyce*. This Court agrees with its fellow district court in the Southern District of New York that the Seventh Circuit's "approach [is] problematic, as it conflates two questions on which different parties bear the burden of proof before different sovereigns: [Mr. Moody] bears the burden of proving to a court of the United States that he lacked privity and knowledge of any negligence whereas the parties suing [Mr. Moody] bear the burden of proving to a court of the State of [Kentucky] that [Mr. Moody] is liable for their injuries." *In re Dieber*, 793 F. Supp. 2d 632, 636 n.5 (S.D. N.Y. 2011). This Court concurs that "[t]hese are distinct questions that ought to be addressed independently." *Id.*

17

Claimants must prove negligence under the first prong of the inquiry before the Court reaches the second prong concerning the owner's privity or knowledge of the negligence, which is where the crux of Claimants' allegations lie. *In re Muer*, 146 F.3d at 415. Therefore, the Court will **GRANT** Mr. Moody's Motion for Leave to File a First Amended Complaint, (Docket No. 69), and **DENY** as **MOOT** Claimants' Motion for Judgment on the Pleadings, (Docket No 59).

Conclusion and Order

The following Order is in compliance with the above Memorandum and Opinion:

**IT IS ORDERED:**

1. Claimants' Motions to Dissolve this Court's Restraining Order and Stay All Proceedings in this Limitation/Exoneration Action Pending Resolution of Claims Filed in State Court are **DENIED**. (Docket Nos. 16; 18; 42; 46.)

2. Petitioner Walsh's Motion to Strike Claimants' Jury Demands is **GRANTED**. (Docket No. 20.)

3. Claimants' Motion for Judgment on the Pleadings as to Petitioner Walsh is **DENIED**. (Docket No. 26.)

4. Claimants' Motion for Judgment on the Pleadings as to Petitioner James Moody is **DENIED** as **MOOT**. (Docket No. 59.)

5. Petitioner James Moody's Motion for Leave to File First Amended Complaint is **GRANTED**. (Docket No. 69.)

6. A **telephonic status conference and/or scheduling conference** is set for **May 3, 2016 at 3:00 PM Eastern Time**. Counsel must call 1-877-848-7030 then give the Access Code 2523122 and #, then when prompted press # again to join the call.

cc: Counsel