UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:15-CV-648-TBR

IN THE MATTER OF:
WALSH CONSTRUCTION CO.,
For Exoneration from or Limitation of
Liability (Barge KS395)                                              In Admiralty

AND

IN THE MATTER OF:
The Complaint for Exoneration from or
Limitation of Liability by James Moody,
as Owner of a 26.1 Foot 2011 Suntracker
PB24 Vessel Bearing Hull Identification
No. BUJ10743J011

**Memorandum Opinion and Order**

This matter comes before the Court upon two Motions. First, Claimants[1] have moved jointly for clarification regarding this Court's November 30, 2016 Order restraining certain proceedings. [DN 166.] Second, Petitioner Walsh Construction Company has filed a Motion for Leave to File a Short Sur-Reply to that Motion for Clarification. [DN 171.] These matters are ripe for adjudication, and their respective merits are discussed below.

**I. Background**

The following Background section is largely taken from this Court's previous Memorandum Opinion & Order dated April 4, 2016. [DN 74.] This case arises out of an accident that occurred on July 4, 2015 between a pontoon boat and a barge that was moored at or near

---

[1] "Claimants" is used throughout this Memorandum Opinion and Order to refer collectively to the following individuals: Virginia Morris, Individually and as the Administrator of the Estate of A'Daisha Swinney, Nyree Wright as the Administrator of the Estate of Joyce Wright, Kyrie Wright by Guardian and Next Friend Belinda Caldwell, Deaven Swinney by Guardian and Next Friend Leah Walker, Mark Swinney, Sr. and Stephanie Swinney, Individually and as Co-Administrators of the Estate of Mark Swinney, Jr., Daniel Swinney by Guardian and Next Friend Mark Swinney, Sr., Donald Webster, Individually and as Administrator of the Estate of Donald Swinney, and Dai Swinney by and through her Guardian and Next Friend Donald Webster.

Tower 5 of the northbound I-75 bridge between Louisville, Kentucky and Jeffersonville, Indiana. Petitioner Walsh Construction Company, ("Walsh"), owns the flat deck barge, referred to as Barge KS395, which was involved in the incident. According to Walsh, the value of Barge KS395 is $150,000. Petitioner James Moody was the owner of the 2011 Suntracker PB24, ("the pontoon boat"), which was also involved in the incident. In August 2014, Mody entered into a "bareboat charter agreement with Derbyville Water Rentals, LLC ("Derbyville")…wherein [he] surrendered possession and control over the [pontoon boat] to Derbyville…." Derbyville rented the pontoon boat to customers who wished to use it on the Ohio River. Moody asserts that the value of the pontoon boat is $1,600.

On July 4, 2015, Derbyville rented the pontoon boat to Danal Swinney, Sr., who took the boat out on the Ohio River with the following individuals: Donald Webster, Donald Swinney, Joyce Wright, Kyre Wright, A'Daisha Swinney, Mark Swinney, Jr., Danal Swinney, Jr., and Daniel Swinney. During the evening of July 4, 2015, the pontoon boat collided with Barge KS395 and, according to Claimants, the pontoon boat was "sucked under the rake" of Barge KS395. As a result of the collision, Donald Swinney, Joyce Wright, A'Daisha Swinney, Mark Swinney, Jr., and Danal Swinney, Sr. all died. After the accident, Walsh and Moody filed separate actions for exoneration from or limitation of liability under the Limitation Act. The Court consolidated those actions and entered restraining orders with regards to Walsh and Moody, enjoining litigation related to this action in any other forums.

## II. Walsh's Motion for Leave to File Sur-Reply

Due to the fact that Walsh's Motion for Leave to File a Sur-Reply deals with Claimant's Joint Motion for Clarification, the Court will address it first. Walsh's Motion [DN 171] argues that, because Claimants' Reply regarding the clarification Motion "cites authority, and makes

factual assertions, that were not included in its original Motion," Walsh should be permitted to file a Sur-Reply. The Court agrees.

"Although the Federal Rules of Civil Procedure do not expressly permit the filing of sur-replies, such filings may be allowed in the appropriate circumstances, especially '[w]hen new submissions and/or arguments are included in a reply brief, and a nonmovant's ability to respond to the new evidence has been vitiated.'" *Key v. Shelby Cnty.*, 551 F. App'x 262, 265 (6th Cir. 2014) (quoting *Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 481 (6th Cir. 2003)). It is true that "sur-replies…are highly disfavored, as they usually are a strategic effort by the nonmoving party to have the last word on a matter." *Liberty Legal Foundation v. Nat'l Democratic Party of the USA, Inc.*, 875 F. Supp.2d 791, 797 (W.D. Tenn. 2012) (internal quotation marks omitted). However, the question of whether to permit such an additional filing is a matter left to the broad discretion of the trial court. *See Key*, 551 F. App'x at 264.

Here, Claimants presented new arguments in their Reply. [*See* DN 168.] Specifically, Claimants argue in the Reply (1) that Walsh does not have standing to enjoin state court litigation or otherwise enforce the restraining order because it is not a party to the state court case at issue; and (2) that Walsh's argument holds no weight because it knew of the state court case before the November 30, 2016 restraining order and raised no objections at that time. [*See id.* at 3-4.] However, in its initial Motion for Clarification, Claimants did not present either of these arguments, nor any authority tending to support those theories of the case. [*See* DN 166.] Because of the fact that "new submissions and/or arguments [were] included in [Claimant's]…reply brief," Walsh's opportunity to effectively respond "has been vitiated." *See Key*, 551 F. App'x at 265. Thus, an avenue has been opened for Walsh to file a Sur-Reply, and this Court will utilize its discretion to grant Walsh's Motion at this time.

## III. Claimant's Joint Motion for Clarification

### A. Introduction

The second Motion at issue is Claimants' Joint Motion for clarification regarding this Court's November 30, 2016 Stay Order. [DN 166.] The restraining order at issue was docketed by the Court on that date in a different case: Case No. 3:16-cv-576-TBR. That case was styled *In re: Matter of Complaint of River Park Marina, LLC*. River Park Marina had filed a Complaint for Exoneration from, or Limitation of, Liability regarding the July 4, 2015 events explained in the Background section above. River Park Marina was the company that allegedly rented the pontoon boat at issue to Danal Swinney, Sr. [DN 116, at 2.]

> In the restraining order, this Court ordered
>
> that the prosecution and/or institution of any suits, actions, or legal proceedings of any nature or description whatsoever in any court whatsoever, against Petitioner [River Park Marina], its agents, servants, or employees, or the Suntracker, arising out of or connected with the accident which occurred on July 4, 2015, on the Ohio River, in the vicinity of Louisville, Kentucky, are, except in this proceeding, hereby stayed and restrained until the hearing and determination of this proceeding….

[Case No. 3-16-cv-576-TBR, DN 17, at 1.] Since this restraining order was entered, and the case was consolidated into this one, River Park Marina was granted summary judgment and is no longer a party to this action. [*See* DN 165 ("it is hereby ordered that Petitioner River Park Marina's motion for summary judgment…is granted. River Park Marina is hereby exonerated from liability for the July 4, 2015 boating accident….").] The clarification Claimants now seek is whether the previously mentioned restraining order entered with respect to River Park Marina remains in effect, or whether it was dissolved by operation of River Park Marina's successful summary judgment motion.

At the outset, it should be noted that, in addition to this Court's restraining order regarding River Park Marina, the Court has also entered two other restraining orders: the first, docketed at DN 5, tracks the language of the above restraining order quite closely, but does so with respect to Walsh and/or Barge KS395, as well as "any claim arising out of or connected with a casualty which occurred on or around July 4, 2015, involving barge KS395, a barge owned *pro hac vice* and operated by Walsh…." [DN 6, at 2.] Second, the Court entered a similar restraining order with respect to Moody. [DN 38.] Claimants filed motions to dissolve these two restraining orders in order to proceed with their claims in state court, but this Court denied these motions. [*See* DN 74.]

### B. Legal Standard

Pursuant to the Limitation Act, 46 U.S.C. § 181 *et seq.*, a vessel owner can "limit liability for damage or injury, occasioned without the owner's privity or knowledge, to the value of the vessel or the owner's interest in the vessel." *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 446 (2001). The Limitation Act was passed in an effort "to limit the liability of vessel owners to their interest in the adventure…and thus to encourage shipbuilding and to induce capitalists to invest money in this branch of industry." *British Transp. Comm'n v. United States*, 354 U.S. 129, 133 (1957) (citations omitted). The procedure for limitation actions is found in Supplemental Admiralty and Maritime Claims Rule F. As the Supreme Court has instructed:

> Rule F sets forth the process for filing a complaint seeking exoneration from, or limitation of, liability. The district court secures the value of the vessel or owner's interest, marshals claims, and enjoins the prosecution of other actions with respect to the claims. In these proceedings, the court, sitting without a jury, adjudicates the claims. The court determines whether the vessel owner is liable and whether the owner may limit liability. The court then determines the validity of the claims, and if liability is limited, distributes the limited fund among the claimants.

*Lewis*, 531 U.S. at 448.

The Limitation Act requires that once a shipowner files a petition and tenders an adequate bond, "the district court must enjoin all other proceedings against the shipowner involving issues arising out of the subject matter of the limitation action." *S & E Shipping Corp. v. Chesapeake & O. Ry. Co.*, 678 F.2d 636, 642 (6th Cir. 1982) (citations omitted). The term given to "the proceeding before the admiralty court in which all competing claims must be litigated" is a "concursus." *Id.* "The purpose of the concursus…is to provide for a marshalling of assets and for a setting of priorities among claims where the asserted claims exceed the value of the vessel and its freight." *Id.* Where "multiple claims are asserted in the district court and are, in the aggregate, in excess of the limitation fund, a multiple claims-inadequate fund circumstance arises," meaning that the district court is then required to conduct a concursus. *Id.* at 643 (citations omitted).

## C. Discussion

The Court has determined that the restraining order remains in effect and, to the extent Claimants wish it to be lifted, the instant Motion must be denied. The Court agrees with Walsh's characterization of the issue, namely, that this case remains a multiple-claims-inadequate-fund limitation case, pursuant to *S & E Shipping Corp.*, 678 F.2d at 643. This Court previously entered restraining orders with respect to Walsh, Barge KS395, and Moody, and subsequently denied the Claimants' attempts to have these restraining orders lifted. [*See* DN 74.] It does not follow, then, that merely because River Park Marina was granted summary judgment, a state court action can proceed with respect to the subject matter of the underlying events of this case. What was true with respect to Walsh, Barge KS395, and Moody, must also be true with respect to River Park Marina, despite the fact that it is no longer involved in this case. To permit Claimants to proceed in state court by lifting the stay would be, as described by Walsh, to permit "an end-run around the clear intent of this Court's Orders," [DN 167, at 5], as well as to ignore

the rule and rationale of the Supreme Court's decision in *S & E Shipping Corp.*, 678 F.2d at 642-643. This case is a multiple-claims-inadequate-fund case and, consequently, the stay should remain in place at this time. This situation should be juxtaposed against the one in which the shipowner's "claim of limited liability is not jeopardized," and where, as a result, he "is subject to all common-law remedies available against other parties in damages actions." *Lake Tankers Corp. v. Henn*, 354 U.S. 147, 153 (1957). That situation is quite different than the one presented here, where "[t]he amount of the claims…far exceed[] the value, if any, of the vessel…." *Id.* at 154.

A second argument offered by Claimants as to why the stay should be lifted or, stated another way, why Walsh cannot prevent this from being done, is that Walsh has no standing. Effectively, Claimants argue that, because Walsh is not a party to the state court action, it has no standing to prevent the state court action from moving forward. It is true that Walsh Construction Company, the entity involved in this case, is not listed as a party to the state court action. In state court, Claimants have sued, among others, the following entities: The Walsh Group, Ltd., Walsh Construction Company II, LLC, and Walsh Construction Group, LLC. [*See* DN 168, at 2.] Thus, Claimants argue, "[t]hese other Walsh entities are not the vessel's owner and therefore [are] not given the statutory right of limitation." [*Id.*] Claimants do concede, however, that Walsh is mentioned in the state case "as a potential party to a joint venture along with the other…Walsh entities." [*Id.*] And there is no dispute that the state court action revolves around this case's underlying events of July 4, 2015.

However, while Claimants' Reply raises interesting constitutional standing issues, this Court agrees with the argument propounded in Walsh's Sur-Reply. This Court has already entered stay orders in this case, and has further denied Claimant's motion to lift that stay. It

cannot follow, then, that the instant stay should be lifted. This is because, irrespective of Walsh's standing to challenge the stay order by virtue of the fact that it is not a party to the state court action, this Court certainly has the authority to keep it in place. Thus, the ultimate question is not a constitutional one revolving around Walsh's standing and, indeed, the Court need not address that question, because the Court has authority to lift or keep in place the stay. And, as stated above, to lift the stay simply because the Walsh entity in this case is not listed in the state court action would be to frustrate the purpose of this and the other two stays. These stays were put in place to prevent litigation in other forums adjudicating the rights and liabilities of the parties involved in the underlying July 4, 2015 events. The Court will not now lift the stay and frustrate its own purpose in imposing them in the first place.

### IV. Conclusion

For the reasons stated herein, **IT IS HEREBY ORDERED** as follows:

1. Walsh's Motion for Leave to File a Short Sur-Reply [DN 171] is **GRANTED.** The Clerk is hereby directed to enter Walsh's Sur-Reply [DN 171-1] as of the date of entry of this Order.

2. Claimant's Joint Motion for Clarification Regarding the November 30, 2016 Stay Order [DN 166] is **DENIED.** The Stay Order remains in effect.

**IT IS SO ORDERED.**

cc: Counsel of Record